## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MARLIN KELLY,

          Petitioner,

          v.

MICHAEL ZAKEN, et al.

          Respondents.

)
)
)
)
)
)
)
)
)

Civil Action No. 2:23-cv-2114

Magistrate Judge Patricia L. Dodge

### MEMORANDUM

Pending before the Court[1] is the Petition for a Writ of Habeas Corpus (ECF No. 1) filed by Marlin Kelly ("Petitioner") under 28 U.S.C. § 2254. Petitioner challenges the judgment of sentence imposed on him by the Court of Common Pleas of Beaver County at criminal docket number CP-04-CR-0000133-2013, after he was convicted of murder of the second degree, murder of the second degree of an unborn child, and criminal conspiracy to commit robbery. Petitioner raises 17 grounds for relief in the Petition: (1) thirteen claims related to the ineffective assistance of his trial counsel; and (2) four claims of violation of his due process rights.

For the reasons below, the Court will deny the petition and will deny a certificate of appealability.

### I.    Relevant Background

The Superior Court of Pennsylvania summarized the underlying facts as follows:

Around August 2012, [Petitioner] became involved in a heroin-dealing operation with three other men: Stephen Murray ("Murray"), Murray's brother, Herbert Murray ("Herbert"), and Tyrone Fuller ("Fuller"). In early October 2012, a disagreement among the four divided the group into two enterprises: [Petitioner] with Fuller, and Murray with Herbert. On October 21, 2012, Murray stole

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including entry of a final judgment.

approximately six bricks of heroin that had belonged to [Petitioner]. After Fuller discovered that Murray had taken the heroin, and was selling it to Fuller and [Petitioner]'s usual customers, [Petitioner] and Fuller formed a plan to retrieve the heroin by robbing Murray at gunpoint.

[Petitioner] and Fuller enlisted the help of James Leo ("Leo"), a heroin addict who frequently provided transportation for Fuller in exchange for heroin. Fuller and [Petitioner] asked Leo to buy heroin from Murray, so that Fuller and [Petitioner] could determine where he lived. In exchange, Fuller and [Petitioner] would provide the buy money and Leo could keep the heroin that he purchased.

Leo agreed to the arrangement and on October 28, 2012, drove [Petitioner] and Fuller to Murray's apartment building. Leo called Murray and arranged to buy the heroin. [Petitioner] and Fuller, both armed with handguns, ascended the exterior stairs of the apartment building, and hid in a shadowy area in the stairwell, waiting to ambush whoever met with Leo.

While [Petitioner] and Fuller were waiting, someone approached their position, causing them to retreat to another floor. [Petitioner] stopped outside of the front door to Murray's apartment. At that moment, Murray's girlfriend, Conekia Finney ("Finney"), opened the door, startling [Petitioner], and causing him to point his gun into the doorway and pull the trigger. Finney was seven months pregnant with her daughter, Sekiah. After realizing he had shot someone, [Petitioner] fled the scene with Fuller following close behind, unaware of what had happened. Both Finney and Sekiah died as a result of the gunshot wound.

Several days later, [Petitioner] and Fuller were apprehended. [Petitioner] was charged with criminal homicide, criminal homicide of an unborn child, robbery, and conspiracy to commit robbery. Fuller cooperated with the police, leading them to the murder weapon. Fuller also entered into a plea agreement and agreed to testify against [Petitioner]. Following his first jury trial, [Petitioner] was found guilty of second-degree murder, second-degree murder of an unborn child, and criminal conspiracy to commit robbery. This court reversed the judgment of sentence based on the trial court's failure to sustain a challenge for cause of a juror who, as an active police officer in Beaver County, had an ongoing relationship with the Beaver County District Attorney's office, including the two Assistant District Attorneys prosecuting the case, and knew several of the police officers set to testify in the case. *See Commonwealth v. Kelly*, 134 A.3d 59, 64 (Pa. Super. 2016). This Court remanded for a new trial. *See Id.* at 65.

Following his second jury trial, [Petitioner] was found guilty of second-degree murder, second-degree murder of an unborn child, and conspiracy to commit robbery.

(ECF No. 10-21 at 1-3.)

On April 20, 2017, Petitioner was sentenced to an aggregate sentence of life imprisonment. The Superior Court of Pennsylvania affirmed his judgment of sentence on May 17, 2018. *Commonwealth v. Kelly*, 192 A.3d 256 (Pa. Super. 2018) (unpublished memorandum) (ECF No. 10-21 at 1-9). Petitioner filed a petition for allowance of appeal in the Supreme Court of Pennsylvania which was denied on November 15, 2018. *Commonwealth v. Kelly*, 197 A.3d 224 (Pa. 2018).

On August 5, 2019, Petitioner filed a *pro se* petition under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-46. Appointed counsel subsequently filed amendments to the petition. An evidentiary hearing was held at which Petitioner and his trial counsel testified.

Following the evidentiary hearing, the trial/PCRA court denied the PCRA petition. Petitioner appealed. The Superior Court of Pennsylvania affirmed the denial of the PCRA petition on September 12, 2022. *Commonwealth v. Kelly*, 285 A.3d 925 (Pa. Super. 2022) (unpublished memorandum) (ECF No. 10-29 at 10-25). Petitioner filed a petition for allowance of appeal, but the Supreme Court of Pennsylvania denied it on June 21, 2023. *Commonwealth v. Kelly*, 300 A.3d 322 (Pa. 2022).

Petitioner began this action in a timely manner on December 8, 2023. (ECF No. 1 at 24.) Respondents filed an answer (ECF No. 12), and Petitioner filed a reply. (ECF No. 19.) The petition is ripe for consideration.

## II.    Discussion

### A.    Jurisdiction

The Court has jurisdiction under 28 U.S.C. § 2254, the federal habeas statute applicable to prisoners in custody pursuant to a state court judgment. This statute permits a federal court to grant a state prisoner a writ of habeas corpus "on the ground that he or she is in custody in violation of

the Constitution…of the United States." 28 U.S.C. § 2254(a). Errors of state law are not cognizable. *Id.*; *see, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). It is Petitioner's burden to prove that he is entitled to the writ. *See, e.g.*, *Vickers v. Superintendent Graterford SCI*, 858 F.3d 841, 848-49 (3d Cir. 2017).

      B.    <u>Standard of Review</u>

In 1996, Congress made important amendments to the federal habeas statutes with the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Among other things, AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 403-04 (2000)). It reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011) (internal quotations and citation omitted).

A finding of fact made by a state court has always been afforded considerable deference in a federal habeas proceeding. AEDPA continued that deference and mandates that "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). Petitioner has the "burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*

AEDPA also put into place a new standard of review, which is codified at 28 U.S.C. § 2254(d). In this Court, it applies "to any claim that was adjudicated on the merits" by the Superior Court of Pennsylvania and prohibits a federal habeas court from granting relief unless the petitioner established that the Superior Court's "adjudication of the claim":

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). For the purposes of § 2254(d), a claim has been "adjudicated on the merits in State court proceedings" when the state court (here, the Superior Court) made a decision that finally resolves the claim based on its substance, not on a procedural, or other, ground. *See, e.g.*, *Richter*, 562 U.S. at 98-100; *Robinson v. Beard*, 762 F.3d 316, 324 (3d Cir. 2014).

Subsection § 2254(d)(1) applies to questions of law and mixed questions of law and fact. A state-court adjudication is "contrary to…clearly established Federal law, as determined by the Supreme Court of the United States" § 2254(d)(1), "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," *Williams*, 529 U.S. at 405, or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent," *id.* at 406. A "run-of-the-mill" state-court adjudication applying the correct legal rule from Supreme Court decisions to the facts of a particular case will not be "contrary to" Supreme Court precedent. *Williams*, 529 U.S. at 406. Thus, the issue in most federal habeas cases is whether the adjudication by the state court survives review under § 2254(d)(1)'s "unreasonable application" clause.

"A state court decision is an 'unreasonable application of federal law' if the state court 'identifies the correct governing legal principle,' but 'unreasonably applies that principle to the facts of the prisoner's case.'" *Dennis v. Sec'y, Pennsylvania Dep't of Corr.*, 834 F.3d 263, 281 (3d Cir. 2016) (en banc) (quoting *Williams*, 529 U.S. at 413). To satisfy his burden under this provision of AEDPA's standard of review, Petitioner must do more than convince this Court that the Superior Court's decision was incorrect. *Id.* He must show that it "'was *objectively* unreasonable.'" *Id.*

(quoting *Williams*, 529 U.S. at 409) (emphasis added by Court of Appeals). This means that Petitioner must prove that the Superior Court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. As the Supreme Court noted:

> It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. *See Lockyer* [*v. Andrade*, 538 U.S. 63 (2003)]*, supra*, at 75, 123 S. Ct. 1166. If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further.

*Id.* at 102.

The standard of review set forth at § 2254(d)(2) applies when a petitioner "challenges the factual basis for" the state court's "decision rejecting a claim[.]" *Burt v. Titlow*, 571 U.S. 12, 18 (2013).[2] "[A] state court decision is based on an 'unreasonable determination of the facts' if the state court's factual findings are 'objectively unreasonable in light of the evidence presented in the state-court proceeding,' which requires review of whether there was sufficient evidence to support the state court's factual findings." *Dennis*, 834 F.3d at 281 (quoting § 2254(d)(2) and citing *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)). "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion

---

[2] Sections 2254(d)(2) and (e)(1) "express the same fundamental principle of deference to state court findings[,]" and federal habeas courts "have tended to lump the two provisions together as generally indicative of the deference AEDPA requires of state court factual determinations." *Lambert*, 387 F.3d at 235. The Court of Appeals has instructed that when it applies, § 2254(d)(2) provides the "overarching standard" that a petitioner must overcome to receive habeas relief, while 2254(e)(1) applies to "specific factual determinations that were made by the state court, and that are subsidiary to the ultimate decision." *Id.*

in the first instance.'" *Titlow*, 571 U.S. at 18 (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)); *see Rice v. Collins*, 546 U.S. 333, 342 (2006) (reversing court of appeals' decision because "[t]he panel majority's attempt to use a set of debatable inferences to set aside the conclusion reached by the state court does not satisfy AEDPA's requirements for granting a writ of habeas corpus."). Thus, "if '[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede'" the state court's adjudication. *Wood*, 558 U.S at 301 (quoting *Collins*, 546 U.S. at 341-42).

C.    Exhaustion and Procedural Default

The "exhaustion doctrine" requires that a state prisoner raise his federal constitutional claims in state court through the proper procedures before he litigates them in a federal habeas petition. *See, e.g.*, *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997). It is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). It "is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts[.]" *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

Additionally, and importantly, a petitioner must have "invoke[d] one complete round of the State's established appellate review process[,]" to satisfy the exhaustion requirement. *O'Sullivan*, 526 U.S. at 845. In Pennsylvania, this requirement means that a petitioner in a non-capital case such as this one must have first presented every federal constitutional claim raised in his federal habeas petition to the Superior Court. *See, e.g.*, *Lambert v. Blackwell*, 387 F.3d 210, 233-34 (3d Cir. 2004).

The doctrine of procedural default, like the doctrine of exhaustion, is "grounded in concerns of comity and federalism," *Coleman*, 501 U.S. at 730. To summarize, it provides that a Pennsylvania state prisoner in a non-capital case defaults a federal habeas claim if he: (a) failed to present it to the Superior Court and he cannot do so now because the state courts would decline to address the claims on the merits because state procedural rules (such as the PCRA's one-year statute of limitations) bar such consideration; or (b) failed to comply with a state procedural rule when he presented the claim to the state court, and for that reason the Superior Court declined to address the federal claim on the merits. *See, e.g.*, *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *O'Sullivan*, 526 U.S. at 851-56 (Stevens, J. dissenting) (describing the history of the procedural default doctrine); *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Lines v. Larkins*, 208 F.3d 153, 162-69 (3d Cir. 2000).

A petitioner may avoid the default of a claim by showing "cause for the default and actual prejudice as a result of the alleged violation of federal law[.]"*Coleman*, 501 U.S. at 750. "'Cause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him[.]" *Id.* at 753 (emphasis in original).

A petitioner may also overcome his default by demonstrating "that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. This means that a procedural default may be excused if the petitioner presents evidence of "actual innocence" that is "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error[.]" *Schlup v. Delo*, 513 U.S. 298, 316 (1995). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial."

*Id.* at 324. In only the extraordinary case will a petitioner be able to establish a "fundamental miscarriage of justice."

    D.    <u>Petitioner's Claims</u>

        1.    Ground One: Ineffective Assistance of Counsel for Failure to Request a "Corrupt and Polluted Source" Instruction

Petitioner first asserts that his trial counsel was ineffective for failing to request a "corrupt and polluted source" jury instruction with regard to Tyrone Fuller's testimony. (ECF No. 1 at 6.)

To prevail on a claim of ineffective assistance of counsel, a petitioner has the burden of establishing that "counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). *Strickland* also requires that the petitioner show that he was prejudiced by his trial counsel's alleged deficient performance. This places the burden on the petitioner to establish "that there is a reasonable probability that, but for counsel's unprofessional errors," the result of his trial "would have been different." *Strickland*, 466 U.S. at 694.

Pennsylvania courts typically articulate *Strickland*'s standard in three parts, while federal courts set it out in two. The legal evaluation is the same, and the differences merely reflect a stylistic choice by state courts. *See*, *e.g.*, *Commonwealth v. Mitchell*, 105 A.3d 1257, 1266 (Pa. 2014) ("this Court has divided [*Strickland*'s] performance component into sub-parts dealing with arguable merit and reasonable strategy. Appellant must, therefore, show that: the underlying legal claim has arguable merit; counsel had no reasonable basis for his act or omission; and Appellant suffered prejudice as a result."); *Commonwealth v. Sepulveda*, 55 A.3d 1108, 1117-18 (Pa. 2012) ("In order to obtain relief on a claim of ineffectiveness, a PCRA petitioner must satisfy the performance and prejudice test set forth in Strickland[.]").

Respondents argue that Petitioner failed to exhaust this claim and it is procedurally defaulted. (ECF No. 12 at 9.) Indeed, Petitioner raised this claim in his PCRA petition,[3] but he did not raise it in his PCRA appeal.[4] Thus, Respondents are correct; the claim is unexhausted. Because Petitioner is time-barred from exhausting the claim now, it is procedurally defaulted. Petitioner makes no attempt to overcome the default. Accordingly, he is not entitled to habeas relief on this claim.

2.    Ground Two: Ineffective Assistance of Counsel for Failure to Request a "Mere Presence" Instruction

Petitioner next asserts that his trial counsel was ineffective for failing to request a "mere presence" jury instruction. (ECF No. 1 at 8.) Respondents argue that Petitioner failed to exhaust this claim and that it is procedurally defaulted. (ECF No. 12 at 9.) Indeed, Petitioner raised this claim in his PCRA petition,[5] but he did not raise it in his PCRA appeal. Thus, as Respondents correctly contend,  the claim is unexhausted. Because Petitioner is time-barred from exhausting the claim now, it is procedurally defaulted. Petitioner has not tried to overcome the default. Accordingly, he is not entitled to habeas relief on this claim.

3.    Ground Three: Ineffective Assistance of Counsel for Failure to Request an Alibi Instruction

Petitioner next asserts that his trial counsel was ineffective for failing to request an alibi instruction. (ECF No. 1 at 10.) Respondents argue that Petitioner failed to exhaust this claim and

---

The PCRA court found no merit to this claim because the jury had been given the instruction at issue. (ECF No. 10-27 at 32-33 (citing N.T., 03/02/17, at 154-56.))

[4] After Respondents filed their Answer, Petitioner filed a motion in which he acknowledged that he incorrectly believed that claims presented in his PCRA petition but not in his PCRA appeal had been exhausted, and he sought the opportunity to properly exhaust them. (ECF No. 17.) This Court denied the motion, explaining that the time for him to raise the claims before the Superior Court of Pennsylvania had expired. (ECF No. 18.)

The PCRA court found no merit to this claim because the jury had been given the instruction at issue. (ECF No. 10-27 at 33-34 (citing N.T., 03/02/17, at 154.))

that it is procedurally defaulted. (ECF No. 12 at 9.) Indeed, Petitioner raised this claim in his PCRA petition, but he did not raise it in his PCRA appeal. Thus, the claim is unexhausted, and because Petitioner is time-barred from exhausting the claim now, it is procedurally defaulted. As Petitioner has made no attempt to overcome the default, he is not entitled to habeas relief on this claim.

> 4.    Ground Four: Ineffective Assistance of Counsel for Failure to Object to Prosecutor's Misstatement of Fuller's Sentence

Petitioner next asserts that his trial counsel was ineffective for failing to object when the prosecutor misstated the length of Fuller's sentence. (ECF No. 1 at 11-12.) Respondents argue that Petitioner failed to exhaust this claim and that it is procedurally defaulted. (ECF No. 12 at 9.) Petitioner raised this claim in his PCRA petition,[6] but he did not raise it in his PCRA appeal. Thus, the claim is unexhausted. Because Petitioner is time-barred from exhausting the claim now, it is procedurally defaulted and Petitioner has not tried to overcome the default. Accordingly, he is not entitled to habeas relief on this claim.

> 5.    Ground Five: Ineffective Assistance of Counsel for Failure to Object to Prosecutor's Statement Concerning Leo's Testimony

Petitioner next asserts that his trial counsel was ineffective for failing to object to the prosecutor's misstatement of the testimony of James Leo. (ECF No. 1 at 13.) Respondents argue that Petitioner failed to exhaust this claim and that it is procedurally defaulted. (ECF No. 12 at 9.) While Petitioner raised this claim in his PCRA petition, he did not raise it in his PCRA appeal. Thus, the claim is unexhausted. Because Petitioner is time-barred from exhausting the claim now, it is procedurally defaulted and Petitioner has not attempted to overcome the default. Accordingly, he is not entitled to habeas relief on this claim.

---

The PCRA court found no merit to this claim, among others, because the prosecutor provided an accurate statement about the length of Fuller's sentence. (ECF No. 10-27 at 37.)

6.  Ground Six: Ineffective Assistance of Counsel for Failure to Object to Prosecutor's Questioning of Brad LaVelle

Petitioner next asserts that his trial counsel was ineffective for failing to object to the intimidating behavior of the prosecutor when questioning defense witness Brad LaVelle. (ECF No. 1 at 8.) Respondents argue that Petitioner failed to exhaust this claim and that it is procedurally defaulted. (ECF No. 12 at 9.) As with many of his other claims, Petitioner raised this claim in his PCRA petition,[7] but did not raise it in his PCRA appeal. Thus, the claim is unexhausted. Because Petitioner is time-barred from exhausting the claim now, it is procedurally defaulted, and Petitioner failed to attempt to overcome the default. Accordingly, he is not entitled to habeas relief on this claim.

7.  Ground Seven: Ineffective Assistance of Counsel for Failure to Object to Prosecutor's Theatrics During Closing

Petitioner next asserts that his trial counsel was ineffective for failing to object to the prosecutor's "theatrics" during the Commonwealth's closing argument. (ECF No. 1 at 14.) Respondents argue that Petitioner failed to exhaust this claim and that it is procedurally defaulted. (ECF No. 12 at 9.) Petitioner raised this claim in his PCRA petition, but he did not raise it in his PCRA appeal. Thus, the claim is unexhausted. Because Petitioner is time-barred from exhausting the claim now, it is procedurally defaulted and he has made no attempt to overcome the default. Accordingly, he is not entitled to habeas relief on this claim.

8.  Ground Eight: Ineffective Assistance of Counsel for Failure to Object to Prosecutor's Insinuation that Brad LaVelle was a Paid Witness

Petitioner next asserts that his trial counsel was ineffective for failing to object to the prosecutor's insinuation that defense witness Brad LaVelle was paid to testify. (ECF No. 1 at 8.)

---

The PCRA court found no merit to this claim because the court had observed no such intimidation at trial. (ECF No. 10-27 at 39-41.)

Respondents argue that Petitioner failed to exhaust this claim and that it is procedurally defaulted. (ECF No. 12 at 9.) Petitioner raised this claim in his PCRA petition but did not raise it in his PCRA appeal. Thus, the claim is unexhausted. Because Petitioner is time-barred from exhausting the claim now, it is procedurally defaulted and he has not tried to overcome the default. Accordingly, he is not entitled to habeas relief on this claim.

> 9.    Ground Nine: Ineffective Assistance of Counsel for Failure to Object to Jury Instruction and for Failure to Request Accomplice Liability Instruction

Petitioner next asserts that his trial counsel was ineffective for failing to object to a confusing jury instruction[8] and for failing to request an accomplice liability instruction. (ECF No. 1 at 15.) Respondents argue that Petitioner failed to exhaust these claims and that they are procedurally defaulted. (ECF No. 12 at 9.) Petitioner raised these claims in his PCRA petition,[9] but he did not raise them in his PCRA appeal. Thus, the claims are unexhausted. Because Petitioner is time-barred from exhausting the claims now, they are procedurally defaulted and he has made no attempt to overcome the default. Accordingly, he is not entitled to habeas relief on these claims.

> 10.    Ground Ten: Ineffective Assistance of Counsel for Failure to Move for a Mistrial

Petitioner next  asserts that his trial counsel was ineffective for failing to move for a mistrial when the jury was deadlocked. (ECF No. 1 at 15.) Respondents argue that Petitioner failed to exhaust this claim and that it is procedurally defaulted. (ECF No. 12 at 9.) Petitioner raised this claim in his PCRA petition, but he did not raise it in his PCRA appeal. Thus, Respondents are correct; the claim is unexhausted. Because Petitioner is time-barred from exhausting the claim

---

[8] Petitioner does not identify the instruction to which he refers.
The PCRA court found no merit to the claim about counsel's failure to request an accomplice instruction because the jury had been given such an instruction. (ECF No. 10-27 at 46.)

now, it is procedurally defaulted and he has failed to attempt to overcome the default. Accordingly,

he is not entitled to habeas relief on this claim.

        11.      Ground Eleven: Due Process Violation based on Failure to Prove
                         Conspiracy to Commit Robbery

Petitioner next asserts that his due process rights were violated when the Commonwealth

failed to adduce sufficient evidence to support a conviction for conspiracy to commit robbery.

(ECF No. 1 at 16.) Respondents argue that Petitioner failed to exhaust this claim and that it is

procedurally defaulted. (ECF No. 12 at 10.)That said, Petitioner did challenge the sufficiency of

the evidence about this claim in his direct appeal. In relevant part, the Superior Court found as

follows:

> In his first claim, [Petitioner] alleges that the evidence was insufficient to support
> his conviction[] for … conspiracy to commit robbery. [Petitioner] asserts that the
> evidence did not establish that he had conspired with Fuller. [Petitioner] argues that
> there was no evidence that he entered into an agreement with Fuller to rob anyone,
> nor evidence that he agreed to help or solicited Fuller to rob anyone.
>
> We apply the following standard of review when considering a challenge to the
> sufficiency of the evidence:
>
>> [W]hether[,] viewing all the evidence admitted at trial in the light most favorable
>> to the verdict winner, there is sufficient evidence to enable the fact-finder to find
>> every element of the crime beyond a reasonable doubt. In applying the above
>> test, we may not weigh the evidence and substitute our judgment for the fact-
>> finder. In addition, we note that the facts and circumstances established by the
>> Commonwealth need not preclude every possibility of innocence. Any doubts
>> regarding a defendant's guilt may be resolved by the fact-finder unless the
>> evidence is so weak and inconclusive that as a matter of law no probability of
>> fact may be drawn from the combined circumstances. The Commonwealth may
>> sustain its burden of proving every element of the crime beyond a reasonable
>> doubt by means of wholly circumstantial evidence. Moreover, in applying the
>> above test, the entire record must be evaluated and all evidence actually received
>> must be considered. Finally, the finder of fact[,] while passing upon the
>> credibility of witnesses and the weight of the evidence produced, is free to
>> believe all, or part or none of the evidence.
>
> *Commonwealth v. Melvin*, 103 A.3d 1, 39-40 (Pa. Super. 2014) (citation omitted).
>
> . . .

Criminal Conspiracy is defined, in relevant part, at section 903 of the Crimes Code:

> A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he: (1) agrees with such other person or persons that they or one of more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime....

*Id.* § 903(a)(1). "The Commonwealth does not have to prove that there was an express agreement to perform the criminal act; rather, a shared understanding that the crime would be committed is sufficient." *Commonwealth v. Nypaver*, 69 A.3d 708, 715 (Pa. Super. 2013).

> An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities. Thus, a conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the coconspirators sufficiently prove the formation of a criminal confederation.

*Commonwealth v. McCoy*, 69 A.3d 658, 664 (Pa. Super. 2013) (citations, brackets, and quotation marks omitted).

Fuller testified that he and [Petitioner] had discussed a plan to steal heroin from Murray by threatening him with firearms and bodily injury. *See* N.T., 8/19/14, at 108-16, 120-26. He testified that [Petitioner] was angry about Murray stealing [Petitioner]'s heroin and selling it to Fuller and [Petitioner]'s customers, and agreed with Fuller to rob Murray. *Id.* at 125. Fuller further testified that the two had discussed using Leo as bait to lure Murray out of his apartment, then ambush him with their guns. *Id.* Fuller stated that he had called Leo to transport them to Murray's apartment, that [Petitioner] and Fuller then armed themselves with firearms, that they dispatched Leo to lure Murray out of his apartment, and hid in waiting outside his apartment, with the intent to ambush Murray. *See id.* at 122-67, 182-83. Fuller testified that [Petitioner] shot Finney. *Id.* at 166.

Leo corroborated Fuller's testimony, testifying that he picked up [Petitioner] and Fuller; was instructed by Fuller, with [Petitioner] present, to show them where Murray lived and to call Murray to make the drug deal; and that Fuller told Leo, in the presence of [Petitioner], that they were going to "beat" Murray, which Leo took to mean that they were going to rob him. *See* N.T., 8/15/14, at 35-51, 155-65.[10]

---

[10] Fuller refused to testify at Petitioner's second trial. Thus, his testimony from Petitioner's first trial was read into evidence. (ECF No. 10-9 at 367-73, 385-86; ECF No. 10-34 at 24-50; ECF No. 10-35 at 1-50; ECF No. 10-36 at 1-50; ECF No. 10-37 at 1-50; ECF No. 10-38 at 1-50; ECF No. 10-39 at 1-50; ECF No. 10-40 at 1-50; ECF No. 10-41 at 1-50; ECF No. 10-42 at 1-36.)

Therefore, the evidence viewed in a light most favorable to the Commonwealth, is sufficient to demonstrate that [Petitioner] was actively engaged in a conspiracy to commit robbery. *See Commonwealth v. Weston*, 749 A.2d 458, 463 (Pa. 2000) (stating that evidence showing that the coconspirator had an argument with the victim, then solicited the defendant's help to confront the victim, and the defendant and co-conspirator armed themselves, then confronted the victim together, is sufficient to establish shared criminal intent required for criminal conspiracy); *see also Commonwealth v. Lamb*, 455 A.2d 678, 685 (Pa. Super. 1983) (stating that the uncorroborated testimony of a co-conspirator to the defendant's participation in a conspiracy to commit robbery is sufficient evidence to establish criminal conspiracy despite the lack of an oral agreement by the defendant or any particular action by the defendant to aid or solicit the robbery). Further, [Petitioner] shot Finney, in furtherance of a felony, causing her and her unborn child's death, a fact that [Petitioner] does not dispute. *See Trial Court Opinion*, 10/25/17, at 13. Thus, upon our review of the evidence, viewed in a light most favorable to the Commonwealth, we conclude that the evidence was sufficient to sustain [Petitioner]'s conviction[] for … conspiracy to commit robbery.

(ECF No. 10-21 at 4-7) (citations to appellate brief omitted.)

Because the Superior Court addressed this claim on its merits, Petitioner cannot obtain habeas relief unless he shows that the court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,[11] or based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *See* 28 U.S.C. § 2254(d). He has failed to do so. Accordingly, he is not entitled to habeas relief on this claim.

 12.    Ground Twelve: Due Process Violation based on Improper Shift of Burden of Proof

Petitioner next asserts that his due process rights were violated when the prosecutor "shifted the burden of proof" during closing argument by stating the Commonwealth did not have

---

[11] The Superior Court applied the correct legal standard. *See Evans v. Court of Common Pleas, Delaware Cty.*, 959 F.2d 1227, 1233 (3d Cir. 1992) (explaining that the test for insufficiency of the evidence is the same under both Pennsylvania and federal law) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

to prove that Petitioner was the shooter. (ECF No. 1 at 16.) Respondents argue that Petitioner failed to exhaust this claim and that it is procedurally defaulted. (ECF No. 12 at 10.) Petitioner did not raise this claim in state court. Thus, the claim is unexhausted. Because Petitioner is time-barred from exhausting the claim now, it is procedurally defaulted and he has made no attempt to overcome the default. Accordingly, he is not entitled to habeas relief on this claim.

        13.    **Ground Thirteen: Ineffective Assistance of Counsel for Failure to Object to Court's Prejudicial Jury Charge**

Petitioner next asserts that his trial counsel was ineffective for failing object to the court's charge to the jury which was "rife with prejudicial expressions of guilt." (ECF No. 1 at 17.) Respondents argue that Petitioner failed to exhaust this claim and that it is procedurally defaulted. (ECF No. 12 at 9.) Petitioner raised this claim in his PCRA petition, but he did not raise it in his PCRA appeal. Thus, the claim is unexhausted. Because Petitioner is time-barred from exhausting the claim now, it is procedurally defaulted and he has failed to attempt to overcome the default. Accordingly, he is not entitled to habeas relief on this claim.

        14.    **Ground Fourteen: Ineffective Assistance of Counsel for Failure to Object to Prosecutor's Use of Perjured Testimony**

Petitioner next asserts that his trial counsel was ineffective for failing to object to the prosecution's knowing use of perjured testimony from Tammy Barker. (ECF No. 1 at 17.) Respondents argue that Petitioner failed to exhaust this claim and that it is procedurally defaulted. (ECF No. 12 at 10.) Petitioner did not raise this claim in state court. Thus, the claim is unexhausted. Because Petitioner is time-barred from exhausting the claim now, it is procedurally defaulted and he made no attempt to overcome the default. Accordingly, he is not entitled to habeas relief on this claim.

15.    Ground Fifteen: Due Process Violation based on References to Post-Arrest Silence

Petitioner next asserts that his due process rights were violated when the prosecution referred to his post-arrest silence "during cross and closing arguments." (ECF No. 1 at 18.)[12] Respondents argue that Petitioner failed to exhaust this claim and that it is procedurally defaulted. (ECF No. 12 at 11.) Petitioner did not raise this claim in state court. Thus, the claim is unexhausted. Because Petitioner is time-barred from exhausting the claim now, it is procedurally defaulted. Although this is the sole issue Petitioner addresses in his Reply, he makes no attempt to overcome the default.[13] Accordingly, he is not entitled to habeas relief on this claim.

16.    Ground Sixteen: Due Process Violation based on Impermissible Inference of Guilt

Petitioner next asserts that his due process rights were violated when the prosecution referred to Fuller's guilty plea and impermissibly inferred Petitioner's guilt. (ECF No. 1 at 18.) Respondents argue that Petitioner failed to exhaust this claim and that it is procedurally defaulted. (ECF No. 12 at 10.) Petitioner did not raise this claim in state court. Thus, the claim is unexhausted. Because Petitioner is time-barred from exhausting the claim now, it is procedurally defaulted and he has not tried to overcome the default. Accordingly, he is not entitled to habeas relief on this claim.

---

[12] Petitioner does not identify any of these references by citation to the record.

[13] To the extent that Petitioner's characterization in his Reply of the references to his post-arrest silence as "fundamentally unfair" (ECF No. at 2) is an attempt to demonstrate that the failure to consider this claim will result in fundamental miscarriage of justice, any such argument fails. As discussed above, this type of claim requires a petitioner to support his allegations of constitutional error with new reliable evidence that was not presented at trial. Petitioner has not done so.

17.    Ground Seventeen: Ineffective Assistance of Counsel for Failure to Object to Admission of Letter to Petitioner's Father

Petitioner finally asserts that his trial counsel was ineffective for failing to object to the admission at trial of a letter that Petitioner wrote to his father which was obtained without a warrant.[14] (ECF No. 1 at 19.)

Respondents argue that Petitioner failed to exhaust this claim and that it is procedurally defaulted. (ECF No. 12 at 11.) Because Petitioner did not raise this claim in state court, the claim is unexhausted. Because Petitioner is time-barred from exhausting the claim now, it is procedurally defaulted. Petitioner made no attempt to overcome the default. Accordingly, he is not entitled to habeas relief on this claim.

## III.    Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. It provides that "[a] certificate of appealability may issue…only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

"When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the district court has rejected a constitutional claim on its merits, "[t]he

---

[14] Petitioner does not provide a record citation to the admission of this evidence.

petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*

Applying those standards here, jurists of reason would not find it debatable whether Petitioner's claims should be denied. Thus, a certificate of appealability will be denied with respect to his claims.

## IV.    Conclusion

For these reasons, the Court will deny the petition and will deny a certificate of appealability.

An appropriate Order follows.


September 9, 2025                                    /s/ Patricia L. Dodge_____
                                                    PATRICIA L. DODGE
                                                    UNITED STATES MAGISTRATE JUDGE